Jones, J.
(dissenting). In my view the scope of investigation (and thus the permissible reach of subpoenas issued by the administrator in aid thereof) should be determined by reference to the allegations of the complaint issued by the commission. Measured by that standard, the subpoena in this case should be quashed (except as to items 1 and 2) — without prejudice, of course, to the issuance of a new subpoena either limited to the complaint which was issued in this case on July 1,1982, or appropriate to the scope of a new complaint should the commission determine to issue one.
The complaint against appellant, the issuance of which was authorized by the commission at the meeting of June 28-29, 1982 to provide “a basis to commence an investigation”, was specifically focused on three described transactions in which it was alleged that appellant had participated:
“1. It is alleged that on July 28,1977, [John Doe] formed a corporation, Fort Ann Properties, which leased land to the R. Jennings Manufacturing Company, Inc. at a monthly rental which by September 1980 equaled $800. In addition, [John Doe], as President of the corporation, secured a $75,000 loan from the Glens Falls National Bank using the property and the lease with the R. Jennings Manufacturing Co., Inc. as security.
“2. It is further alleged that [John Doe] borrowed $11,000 from Marjorie Baker on December 15, 1967, and *64 that in 1976 the estate of Ms. Baker brought suit to recover the unpaid balance. On November 14, 1978, a judgment was. entered against [John Doe] for the remaining unpaid balance, $1,643.07.
“3. It is further alleged that on April 11, 1979, [John Doe] was named as the executor of the will of Han Spiesen. After Mr. Spiesen died on July 6, 1979, [John Doe] acting as executor of the estate, sold certain property on behalf of the estate on August 11, 1981.”
It is expressly provided in the statute authorizing investigation of the conduct of a Judge by the commission that the “complaint shall serve as the basis for such investigation” (Judiciary Law, § 44, subd 2). Linked to that prescription is the authorization for the issuance of subpoenas deemed “relevant or material to an investigation” (Judiciary Law, § 42, subd 1). Accordingly, the permissible scope of a subpoena must be determined by reference to the subject matter of the complaint issued by the commission — here three specific transactions.
The complaint in this instance being so limited, the permissible scope of the subpoena was restricted to evidence relevant or material to one or more of those three transactions. The subpoena now under review called for documents and records far beyond the sphere of any of those transactions. For this reason I would affirm the order of the Appellate Division which quashed the subpoena except as to those items which related to the transactions identified in the complaint.
It is suggested that to limit the reach of the subpoena authority to the allegations of the complaint would seriously frustrate the investigative activities of the commission staff. To the extent that such a rule would call for a closer and more direct participation on the part of the commission itself, it would be sound and healthy; to the extent that there are fears that it would inhibit the activities of the commission, such fears are ephemeral.
If in the course of investigation of a particular identified transaction (which may have served to trigger the inquiry) reasonable suspicion is aroused as to possible judicial misconduct on other occasions or with reference to other mat *65 ters (as was the case in this instance),[1] a new or revised complaint could readily be issued, drawn to reflect the area of the Judge’s activities that the commission then determines should be investigated. It would not then, or indeed at any time, be necessary to limit the complaint to specific transactions or episodes (with the consequent restriction on the scope of subpoena authority); it would suffice to describe the area of suspected misconduct or the category of activities to be investigated, of which an identified transaction was illustrative, as for instance, “loans made to the judge by his clients, by litigants in his court, or by attorneys appearing before him, including [particular identified transaction or transactions]”, or “business enterprises organized for profit in which the judge was an active participant, including [again, specified instances]”. It would then be the commission and not the administrator that would determine whether the investigation was to be of specified transactions only or of categories of conduct as well.
If it be asserted that recognition of such a requirement would be to exalt form over substance (on the ground that the administrator and the staff are always subject to the continuing supervision and control of the commission), the assertion misapprehends the respective roles of the commission and the administrator. Its acceptance would permit the scope of investigation to be determined by the administrator, subject only to monitoring by the commission — a situation conceptually and practically quite different from requiring commission authorization to conduct the investigation. Initial authorization of an investigation of judicial conduct, as well as the disposition of formal charges of misconduct, is the sole responsibility of the commission. I perceive no sound reason why in every case the scope of the investigation should not be determined by the commission itself in the exercise of its collegial judgment when it authorizes issuance of the enabling complaint. Whether and to what extent an investigation is to be conducted, with resort to compulsory process, is a matter of enormous portent for the individual who is to be the *66 target of the investigation,[2] and the propriety of undertaking the investigation has far-reaching implications for the public as well as for the judiciary. I am not persuaded, by what I would characterize as arguments of practical expediency, to the view that, once a complaint — any complaint — has been issued by the commission, the staff may then investigate all areas of the Judge’s conduct which fall within the broad category of misconduct of which the identified transaction is illustrative. A broad categorial investigation might well be appropriate, but that determination should be made by the commission. The predicate and warrant for launching an investigation of a course of conduct extending over several years of judicial service is of a different order than that which would justify inquiry as to a specific transaction with respect to which the commission has received a complaint. Determination of the scope of investigation is too important to be fobbed off with appeals to efficiency or expediency. Such determination is fundamental, a responsibility to be assumed and discharged by the commission itself.[3]
Chief Judge Cooke and Judges Jasen, Wachtler, Meyer and Simons concur in Per Curiam opinion; Judge Jones dissents and votes to affirm in a separate opinion in which Judge Kaye concurs.
Order modified, with costs to petitioner, and respondent directed to comply with the subpoena duces tecum in accordance with the opinion herein and, as so modified, order affirmed.

. The inference is available from the record in this case that the issuance of the sweeping subpoena dated October 22,1982 was prompted by the suspiciously noninformative and even possibly evasive answers given by appellant when he was examined by the commission staff.

. To require the scope of the investigation to be set out in the complaint would serve the salutary purpose, too, of affording the Judge under investigation notice, at the time of service of the complaint (Judiciary Law, § 44, subd 3; 22 NYCRR 7000.3 [e]), of the nature and extent of the investigation being conducted.

. The record before us contains no evidence that the members of the commission were aware of the issuance of the subpoena or of its scope prior to or at the time of its issuance in the name of the commission by the administrator on October 22,1982, nor does the commission now advance any such contention in support of its position. By some contrast, the complaint bears the explicit indorsement that it was “[a]uthorized at the meeting of June 28, 29, 1982.”